IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| CHARLES D. ENGLISH | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-458 |
| BOBBY LUMPKIN | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles D. English, a prisoner confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, against Bobby Lumpkin.[1]

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendant filed a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56. Plaintiff filed a response, and the matter is now ripe for review.

## Factual Background

Plaintiff is a convert to Judaism who is currently confined at the Stiles Unit. Plaintiff contends that he completed the studies to be a converted member of the Orthodox Jewish community, but there are certain religious practices that are necessary for him to complete the conversion process. Specifically, Plaintiff alleges he must be circumcised by a Jewish Mohel, a

---

[1] Plaintiff sued additional Defendants for alleged violations of his civil rights under 42 U.S.C. § 1983. Those claims have been dismissed. The only claims remaining are the RLUIPA claims, which are addressed in this Report and Recommendation.

Jewish Rabbinical Court must approve his conversion, he must have access to a Mikveh, he is required to grow locks and a beard, he needs access to communal prayers and studies and Sabbath rituals, and he is required to eat kosher meals. Plaintiff contends that none of these religious practices are permitted at the Stiles Unit. Plaintiff alleges the denial of his requests to participate in these religious rituals and practices violates his statutory rights under the RLUIPA.

## Motion for Summary Judgment

Defendant contends that Plaintiff has only exhausted his claim regarding circumcision. Defendant argues that the remaining claims must be dismissed because Plaintiff failed to exhaust them in a procedurally-correct manner. Defendant asserts that Plaintiff's request for long hair and a beard are moot because TDCJ has updated its grooming policy to allow long hair and beards. Defendant contends that Plaintiff failed to meet his burden of proving that the challenged policies substantially burden his religious practice. Further, Defendant asserts that the challenged policies are the least restrictive means of advancing compelling government interests. Finally, Defendant claims that Plaintiff is not entitled to injunctive relief because the requested relief is not narrowly tailored.

## Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

2

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Naranjo v. Thompson*, 809 F.3d 793, 806 (5th Cir. 2015) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

*Exhaustion*

Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The statute provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity

to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. Prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because exhaustion is a threshold issue, the district court may resolve factual disputes concerning exhaustion without a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The primary purpose of a grievance is to alert prison officials to a problem so that it can be addressed, not to provide notice to a prison employee of a possible lawsuit. *Johnson*, 385 F.3d at 522. Thus, it is not necessary for a prisoner to identify future defendants by name in the grievance in every circumstance. *Id*. at 517. Nor is it necessary for an inmate to allege a legal theory or every fact that would support a legal theory in his grievance. *Id.* at 517-18. "A grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id*. at 517.

"The Texas prison grievance process is straightforward." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). The Texas Department of Criminal Justice, Correctional Institutions Division has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson*, 385 F.3d at 515. A prisoner does not exhaust administrative remedies by simply filing each step without regard for procedural requirements. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*

*v. Ngo*, 548 U.S. 81, 90-91 (2006). There are no special circumstances that would excuse a prisoner's failure to comply with the applicable deadlines and procedural rules. *Ramirez*, 595 U.S. at 421; *see e.g. Gonzalez v. Resendez*, No. 22-40597, 2023 WL 5346061, at *1 (5th Cir. Aug. 18, 2023) (unpublished) (finding that a claim raised for the first time in a Step 2 grievance was unexhausted because the plaintiff failed to file procedural rules); *Simons v. Davis*, No. 20-40570, 2022WL 3226619, at *2 (5th Cir. Aug. 10, 2022) (unpublished) (Texas prisoner did not exhaust administrative remedies because he failed to file a Step 1 grievance within the 15-day time limit).

On April 24, 2020, Plaintiff filed a Step 1 grievance (#2020110682) regarding limitations on his religious practices at the Stiles Unit. (ECF No. 54-1 at 22-23.) Plaintiff requested a religious circumcision performed by a Jewish Mohel, hot kosher meals, daily Tefillin prayers, weekly Rabbinical Torah readings and studies, and to practice Kiddish on the Sabbath. Plaintiff's Step 1 grievance was denied on June 11, 2020. Plaintiff filed a Step 2 grievance on June 14, 2020. (ECF No. 54-1 at 20-21.) Plaintiff raised the same five claims, and he also complained that his request for a circumcision was the only issue addressed in the response to his Step 1 grievance. Plaintiff received the following response to his Step 2 grievance: "An investigation has been conducted into your complaint. Only grieve one issue at a time. Circumcision is a medical procedure and not a Chaplaincy issue. No further action from this office is warranted." (ECF No. 54-1 at 21.)

Plaintiff's grievances did not concern requests for a Jewish Rabbinical Court, a Mikveh, some of his specific requests for observation of the Sabbath, and the ability to have locks and a beard. Thus, those claims are unexhausted. In addition, except for the claim regarding circumcision, Plaintiff's other claims are unexhausted because he did not follow TDCJ procedures limiting grievances to one issue, and it is clear that prison officials did not address the merits of the other

5

claims. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (noting that TDCJ rules permit only one issue to be raised in a grievance). There is no genuine dispute of material fact regarding the exhaustion of Plaintiff's claims. As a result, the only claim that was properly exhausted through TDCJ's grievance procedure is Plaintiff's claim regarding circumcision.

*Religious Land Use and Institutionalized Persons Act*

Plaintiff alleges that the denial of a circumcision performed by a Jewish Mohel violates his rights under the RLUIPA. The RLUIPA was enacted to guarantee more extensive protection for the free exercise of religion than is guaranteed by the First Amendment. *Ramirez*, 595 U.S. at 424. The RLUIPA, in part, protects the religious rights of institutionalized persons who require government permission and accommodation to practice their religion. *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The statute prohibits a government from imposing a substantial burden on a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless the government demonstrates the burden is: (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). Cases brought pursuant to the RLUIPA require a "fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Chance v. TDCJ*, 730 F.3d 404, 411 (5th Cir. 2013). The court must give due deference to the expertise of prison officials in establishing regulations and procedures to maintain order, security and discipline, taking into consideration costs and limited resources. *Cutter*, 544 U.S. at 723. However, there are limits to the deference owed to the judgment of prison officials. *Chance*, 730 F.3d at 419. Otherwise, prison officials could prohibit all religious practices by citing a generally-applicable policy. *Id*.

The plaintiff bears the initial burden of proving the challenged government action substantially burdens his religious exercise. *Ramirez*, 595 U.S. at 425; *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. 2011). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The plaintiff must first show that the requested accommodation is based on a sincerely-held religious belief, and not motivated by other reasons. *Ramirez*, 595 U.S. at 425. Then, the plaintiff must also demonstrate that a government regulation places a substantial burden on his religious exercise by pressuring the plaintiff to significantly modify his religious behavior and significantly violate his beliefs. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015); *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). A government regulation does not pose a substantial burden to religious exercise "if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570. Because courts are "ill-suited to resolve issues of theology," the court must not inquire whether a religious practice is central to the adherent's religious belief system. *See Adkins*, 393 F.3d at 570. A plaintiff is only required to demonstrate the "honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion." *Id.* Further, he is not required to demonstrate strict doctrinal adherence to all the standards set by his religious authorities to prove his sincerity. *Moussazadeh v. TDCJ*, 703 F.3d 781, 791 (5th Cir. 2012).

If the plaintiff shows that the challenged government action substantially burdens his religious exercise, the burden shifts to the defendant to prove a compelling state interest, and that the government action is the least restrictive means of furthering that interest. *Ramirez*, 595 U.S. at 425; *DeMoss v. Crain*, 636 F.3d at 150. In making this determination, the court must give "due

deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Brown v. Collier*, 929 F.3d 218, 229 (5th Cir. 2019) (quoting *Cutter*, 544 U.S. at 723). The least-restrictive-means standard places a heavy burden on the defendant. *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 728 (2014). The defendant must show that there are no other means of furthering the compelling interest without imposing a substantial burden on the plaintiff's religious exercise. *Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016).

Defendant does not challenge the sincerity of Plaintiff's religious beliefs, but he contends that the denial of Plaintiff's request for a circumcision does not substantially burden Plaintiff's religious exercise. *But see Tormasi v. Lanigan*, 363 F. Supp.3d 525, 541 (D.N.J. 2019) (finding that allegations that prison officials obstructed or failed to aid the plaintiff's effort to obtain a circumcision was sufficient to plead that the plaintiff's religious exercise was substantially burdened); *Vega v. Lantz*, No. 3:04CV1215(DFM), 2013 WL 6191855, at *7 (D. Conn. Nov. 26, 2013) (denial of request for circumcision substantially burdened the plaintiff's religious exercise). However, it is not necessary to resolve whether Plaintiff's inability to have a circumcision performed by a Jewish Mohel while he is incarcerated substantially burdens the practice of his religious beliefs. In this case, Defendants have shown that they have compelling interests in the provision of adequate medical care, security, controlling its resources and the costs, and promoting order in the prison, and that the applicable policies prohibiting cosmetic or elective surgeries are the least restrictive means of furthering those interests.

Defendant submitted the affidavit of Christopher Carter, the Director of the Rehabilitation Programs Division at TDCJ. (ECF No. 52-7 at 2-8.) Mr. Carter is responsible for overseeing daily

operations and activities of six departments, including the TDCJ Chaplaincy Department. With respect to a request for a religious circumcision, Mr. Carter states the following:

> The Offender Health Plan and CMHC Policy govern the provision of cosmetic surgery and do not provide for religious circumcisions. Cosmetic services are only provided in very limited circumstances, which are not present here.
>
> Chaplaincy does not control whether an inmate may receive a circumcision. Specifically, a circumcision would require a determination by a medical provider as to whether the surgical procedure is appropriate. Chaplaincy cannot make that medical determination or unilaterally request or order this procedure. Further, chaplaincy provides a variety of other opportunities for inmates to practice their Jewish faith in a correctional setting, as appropriate, in light of cost, security, medical, and logistical needs in running a prison. The Offender Health Plan covers care that is medically mandatory or medically necessary. Assuming here that Chaplaincy could make a determination regarding medical care, for Chaplaincy to provide circumcisions based on religious beliefs would implicate cost and medical concerns, given that providing surgeries to inmates when they merely state their religious beliefs require them to receive the procedure would lead to a significant cost burden on TDCJ. It would also allow inmates to bypass the Offender Health Plan and receive care that TDCJ has not contracted for with its medical partners, as well as raise medical concerns.

(ECF #52-7 at 3-4.) Defendant also submitted the affidavit of Rabbi David Goldstein, a contract prison chaplain for TDCJ. (ECF #52-8 at 2-5.) Rabbi Goldstein states that granting Plaintiff's request for a religious circumcision performed by a Mohel "that would require Mr. English to undress, for his foreskin to be removed by non-medical [personnel], involving a scalpel and other tools that could be used as weapons would place a significant burden on not only TDCJ security, but also on TDCJ medical personnel, who would then need to permit elective procedures by non-medical personnel, on religious bases." (ECF #52-8 at 3.)

Other courts have held that prison systems have a compelling government interest in controlling costs, and that denying elective religious circumcisions is the least restrictive means of furthering that interest. *See e.g., Nunez v. Wolf*, No. 3:15-cv-01573, 2022 WL 4866648, at *6 (M.D.

Pa. Sept. 30, 2022) (holding that the denial of a request for an elective circumcision for religious purposes was the least restrictive means of furthering a compelling governmental interest in the allocation of taxpayer money for elective surgeries), *appeal docketed*, No. 22-3076 (3d Cir. Nov. 2, 2022); *Vega*, 2013 WL 6191855, at *8 (holding that denial of request for elective circumcision is least restrictive means of furthering government interest in the allocation of taxpayer money and not emphasizing wealth disparities with prisoners who have the means to pay for elective surgeries). Further, Plaintiff is requesting that a circumcision be performed by a Jewish Mohel, not by a medical professional who is trained in providing medical care in a correctional setting. This could potentially lead to medical issues and increased costs in the event of complications caused by the procedure. Additionally, allowing a medical procedure involving sharp instruments to be performed by an individual without training in a correctional setting would present significant security issues.

In this instance, there is no genuine dispute of material fact. Defendant has demonstrated that the denial of a religious circumcision performed by a Jewish Mohel furthers TDCJ's compelling interests in prison security, controlling costs, and the provision of appropriate medical treatment to prison inmate. Denying Plaintiff's request is the least restrictive means for advancing those compelling interests. Therefore, Defendant is entitled to summary judgment.

### Recommendation

Defendant's motion for summary judgment should be granted.

### Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 26th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge